# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LANNY SMITH,<br><br>     Petitioner,<br><br> v.<br><br>LAWRENCE G. WASDEN, Idaho<br>Attorney General, and BRENT REINKE,<br>Director of the Idaho Department of<br>Correction,<br><br>     Respondents. | Case No. 4:08-00227-EJL<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

   Currently pending in this habeas corpus matter are Petitioner's Motion to File Amended Petition for Writ of Habeas Corpus (Dkt. 61), Petitioner's Motion to Expand the Record with Additional Attachments (Dkt. 69), and Respondents' Motion for Summary Judgment related to the original Petition (Dkt. 12). The parties have adequately stated the facts and the law in their briefing, and the Court will resolve these matters on the parties' briefing and the written record without oral argument. D. Idaho L. Civ. R. 7.1(d)(1).

   For the reasons set forth more fully below, the Court grants Petitioner's Motion to Amend, conditionally grants Petitioner's Motion to Expand the Record, and dismisses Respondents' Motion for Summary Judgment. However, the Court will dismiss Claims A,

C (subpart 3), D, E, F, G, and I from the Amended Petition because it plainly appears that Petitioner is not entitled to relief on those claims. *See* Rule 4 of the Rules Governing Section 2254 Cases.

Respondents will be ordered to file an Answer to the non-dismissed claims, and Petitioner may file a Reply.

## BACKGROUND

In 1992, Leo and Mary Downard were shot to death in their home in Ammon, Idaho. Petitioner's brother, Jeff Smith, was originally suspected of murdering the Downards, but the charges against him were dismissed at his preliminary hearing. After developing new evidence, the State then prosecuted Petitioner.

In 1996, Petitioner was convicted of two counts of murder in the first degree and one count of burglary. (State's Lodging A-3, p. 528.) He was sentenced to a controlling term of life in prison without the possibility of parole. (State's Lodging A-3, pp. 654-56.) The Idaho Court of Appeals affirmed Petitioner's convictions and sentences on direct appeal, and the Idaho Supreme Court declined to review the case. (State's Lodgings B-3, B-6, B-7.)

After Petitioner's trial had concluded, but while his appeal was still pending, the State forwarded a Supplemental Discovery Response to one of Petitioner's trial attorneys, Stevan Thompson. (State's Lodging C-1, pp. 12-18.) The Supplemental Response contained a recently completed written statement from a Jamie Lynn Hill in which she claimed to have witnessed an altercation between Jeff Smith and his ex-wife in 1994 or

1995, before Petitioner was tried. (State's Lodging C-1, p. 16.) Hill asserted that when she tried to intervene, Jeff Smith told her, "you better back down little girl, or I'll take care of you just like I took care of that ol' Ammon couple." (State's Lodging C-1, p. 16.)

Stevan Thompson filed a Petition for Post-Conviction Relief on Petitioner's behalf, alleging that Petitioner had been deprived of his right to the effective assistance of counsel at trial. (State's Lodging C-1, pp. 7-9.) The State filed a Motion for Summary Disposition, and the state district court appointed new counsel to represent Petitioner in the post-conviction matter, replacing Thompson. (State's Lodging C-1, pp. 23-24, 34.)

Based on the information provided by Hill, Petitioner's new counsel amended the Petition to allege that the prosecution had withheld exculpatory evidence from the defense, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (the "*Brady* claim"). (State's Lodging C-1, pp. 41-42.) In support, he included a new affidavit from Hill, in which she reiterated her claim that Jeff Smith had said that he would "take care of you just like I took care of that ol' Ammon couple," but she also added that she had contacted the Bonneville County Sheriff's Office to report Smith's comment within a few days of the altercation. (State's Lodging C-1, pp. 43-44.)

The state court summarily dismissed the claims of ineffective assistance of trial counsel without allowing evidentiary development, but it allowed Petitioner to go forward with the *Brady* claim. (State's Lodging C-1, p. 100; State's Lodging C-4.) After holding an evidentiary hearing, the court then denied relief, concluding that the evidence was insufficient to establish that Hill had contacted law enforcement officers with sufficient

specificity about Jeff Smith's alleged statement such that the prosecution would have had a duty to disclose it to the defense. (State's Lodging C-4, p. 244.)

On appeal, the Idaho Court of Appeals affirmed the summary dismissal of Petitioner's claims of ineffective assistance of counsel and the lower court's decision that Petitioner was not entitled to relief on his *Brady* claim. (State's Lodging D-4, p. 8-11.) The Idaho Supreme Court denied Petitioner's request for review. (State's Lodging D-8.)

On May 23, 2008, Petitioner filed a Petition for Writ of Habeas Corpus in this Court. The Court conducted its initial review and allowed Petitioner to proceed with his *Brady* claim and a claim of ineffective assistance of trial counsel, which appeared to be based on counsel's advice to Petitioner not to testify at his criminal trial. (Dkt. 5, pp. 2-5.) The Court noted that Petitioner's claims of actual innocence were not cognizable as freestanding habeas claims. (Dkt. 5, p. 2.) Petitioner then filed a supplement, clarifying that he is also alleging that his counsel was ineffective on direct appeal. (Dkt. 7.) Respondents submitted an Answer to the Petition and a Motion for Summary Judgment. (Dkts. 12, 13.)

The Court appointed counsel to assist Petitioner, and it conditionally denied Respondents' Motion for Summary Judgment subject to reconsideration after Petitioner's counsel had an opportunity to respond. (Dkt. 27, pp. 14-15.) The Court later granted counsel's request to engage in limited discovery. (Dkt. 43.)

With the assistance of counsel, Petitioner has filed a response to Respondents' Motion in addition to motions to amend the Petition with several new claims and to

expand the record with new documentary evidence. These matters are now ripe, and the Court is prepared to issue its ruling.

## MOTION FOR LEAVE TO AMEND

Petitioner has requested leave to filed an Amended Petition that contains several new factual allegations and claims. (Dkt. 62.) Respondents object to the request, arguing that Petitioner has engaged in unnecessary delay and that the amendments would be futile because the new claims are untimely and procedurally defaulted. (*Id.*)

An application for habeas relief may be amended "as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Rule 15 of the Federal Rules of Civil Procedure governs the amendment of civil pleadings. Because a responsive pleading has been served in this case, Petitioner may amend only by leave of court, which shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a). There is a strong public policy in favor of amendment, but a court retains the discretion to deny leave to amend after considering factors such as bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

After weighing the *Bonin* factors, the Court will exercise its discretion under Rule 15(a) and allow the amendment. The Court does not find evidence of bad faith or unnecessary delay, and the Court sees little prejudice to Respondents because they may still raise all procedural defenses in an answer to the Amended Petition.

Because the Court will allow the Amended Petition to be filed, Respondents'

Motion for Summary Judgment pertaining to the original Petition will be dismissed without prejudice.

## MOTION TO EXPAND THE RECORD

Petitioner next seeks to expand the existing state court record with deposition transcripts of various witnesses that have been developed in discovery, which include the depositions of Stevan Thompson, Victor Rodriguez, Heidi Liebert, and Michael Dickson. (Dkts. 63, 64.) Petitioner also asks for permission to expand the record with "Defense Exhibit AA," which he contends contains "all documents related to the motion by defense to put in evidence regarding Jeff Smith's character." (Dkt. 69, p. 2.) Respondents do not object to these requests "to the extent that [Petitioner] is attempting to expand the record to overcome the state's procedural default defense," but they do object "to the extent [Petitioner] is attempting to expand the record in support of his new claims." (Dkt. 76, p. 6.)

Under Rule 7 of the Rules Governing Section 2254 Cases, a federal district court has the authority to expand the record in a habeas proceeding with additional "materials relating to the petition." In cases that are subject to the Antiterrorism and Effective Death Penalty Act (AEDPA), as here, Rule 7 must be construed in light of AEDPA's provisions limiting new evidentiary development. Specifically, 28 U.S.C. § 2254(e)(2) prohibits an evidentiary hearing in federal court when the petitioner "failed to develop" the factual basis of a claim in state court, unless one of two narrow exceptions is applicable. This restriction also applies when the petitioner seeks relief on new evidence without an

evidentiary hearing. *See Holland v. Jackson*, 542 U.S. 649, 652 (2004); *accord Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005).

Rule 7 retains independence from § 2254(e)(2), however, when a petitioner only intends to establish some preliminary point, such as proving cause and prejudice to excuse a procedural default, rather than offering new evidence to show that he is entitled to habeas relief on the merits. *See*, *e.g.*, *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002) (holding that § 2254(e)(2) is not applicable to evidentiary hearing on procedural default); *accord Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir. 2001).

Here, it is not clear whether Petitioner is seeking to expand the record to overcome procedural default arguments or to show that he is entitled to relief on the merits, but it appears that he intends for the new evidence to serve double duty on these issues. Respondents do no object to expansion of the record if it is limited to procedural matters, and the Court finds that it is premature to address whether Petitioner may rely on an expanded record to show that he is entitled relief.

Accordingly, the Motion will be conditionally granted. The Court will revisit, if necessary, whether Petitioner may rely on an expanded record to support the merits of his claims after final briefing.

## REVIEW OF THE AMENDED PETITION

The Court now reviews the Amended Petition to determine whether it is subject to summary dismissal under Rule 4 of the Rules Governing Section 2254 Cases. Summary dismissal is appropriate where "it plainly appears from the face of the petition and any

exhibits annexed to it that the petitioner is not entitled to relief in the district court." *Id*. The Court takes judicial notice of the record of the state court proceedings that Respondents have lodged with the Court.

Petitioner raises the following nine claims in his Amended Petition:

(1)    The State failed to disclose exculpatory, impeaching, and material evidence that Jeff Smith murdered the Downards (Claim A) (the *Brady* claim);

(2)    Petitioner's right to present a complete defense was violated when the trial court precluded evidence that would have implicated Jeff Smith in the crime (Claim B);

(3)    Petitioner was deprived of his right to the effective assistance of trial counsel under the Sixth and Fourteenth Amendments (Claim C) because his counsel failed to (a) advise Petitioner adequately about his right to testify, (b) investigate and present forensic evidence or to challenge the State's forensic evidence, (c) investigate new evidence of Jeff Smith's guilt or move for a new trial, (d) present evidence showing the unreliability of State's witness Beverly Huffaker; (e) investigate and present evidence of Petitioner's good character, (f) show Jeff Smith's violent and threatening behavior, or (g) object to the trial prosecutor's shifting of the burden of proof in closing argument;

(4)    Petitioner's right to a fair trial was violated by the cumulative nature of the State's forensic experts and evidence, and by the late disclosure of expert

witnesses (Claim D);

(5)     Inadmissible character evidence was admitted at trial that had no relevance without a nexus between the character trait and the crime (Claim E);

(6)     The admission of inmate James Swogger's testimony violated Petitioner's right to a fair trial because Swogger "lied" to investigators and the prosecuting attorney (Claim F);

(7)     The prosecuting attorney committed misconduct by vouching for the State's witnesses during his closing argument (Claim G);

(8)     Petitioner was deprived of his Fourteenth Amendment right to the effective assistance of counsel on direct appeal because counsel failed to raise issues that Petitioner was deprived of his right to present a defense and that the prosecuting attorney improperly shifted the burden of proof in his closing argument (Claim H);

(9)     Petitioner is actually innocent of the crime (Claim I).

(Dkt. 62, pp. 6-42.)

After reviewing these claims and considering the record of the state court proceedings, the Court concludes that it plainly appears that Petitioner will not be entitled to relief on Claims A, C (limited to subpart 3), D, E, F, G, and I. No useful purpose would be served by allowing the expenditure of additional time and resources on these claims, and they will be dismissed.

## 1. The *Brady* Claim (Claim A)

Petitioner first contends that his Fourteenth Amendment right to due process of law was violated when the State suppressed material exculpatory evidence from the defense, in violation of the principles derived from *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner's *Brady* claim now has two primary components: (1) Jeff Smith's incriminating statement to Jamie Lynn Hill in 1994 or 1995; and (2) a claim by Jeff Smith's ex-wife, Robin Jacobson, that she told police officers in 1996 that she had found a bloody surgical glove under Smith's mattress, which she thought was connected to the Downards' homicides. (Dkt. 62, pp. 6-13.)

The first part of this claim was the subject of an evidentiary hearing during the state post-conviction proceeding, and the Idaho Court of Appeals' denied the claim on the merits. To be entitled to relief, Petitioner must show that the Idaho Court of Appeals' decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Petitioner is unable to carry this burden.

A defendant's due process right to a fair trial is violated when the prosecution has withheld, either intentionally or inadvertently, evidence that is favorable to the defendant and that is material to guilt or punishment. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Here, however, the state district court found that Petitioner had failed to show that the prosecution withheld favorable evidence because he had not proven that Hill reported Smith's statement with sufficient specificity to officials investigating the Downards'

murders. The Idaho Court of Appeals agreed, holding that "the district court properly ruled that Petitioner failed to demonstrate that the State suppressed evidence of Jeff's threat." (*Id*. at 10-11.) This dispositive factual finding was not an unreasonable one based on the evidence presented in state court.

At the evidentiary hearing, Hill initially testified that she had called the police and informed them on two different occasions about Smith's statement near the time that the incident occurred, but she later backtracked and admitted that she could not recall the details and that she was not "100 percent" certain what she said to them. (State's Lodging C-4, pp. 93-94.) The State also introduced evidence that cast some doubt on Hill's reputation for honesty. (State's Lodging C-4, p. 159.) The state district court was in a superior position to assess Hill's credibility and resolve these factual questions. Moreover, Petitioner has not come forward with new evidence that would clearly and convincingly establish that Hill had, in fact, notified proper investigative authorities about Smith's statement at the relevant time. 28 U.S.C. § 2254(e)(1) (state court findings of fact are presumed to be correct absent clear and convincing evidence). In short, Petitioner simply has not established that officials with authority in the Downard case knew about the incident between Smith and Hill such that they would have had a duty to disclose it to the defense.

Petitioner attempts to avoid this result by arguing that because there is evidence that Hill notified her father, Gary Hagen, who was a Captain with the Idaho Falls Police Department, Hagen's knowledge of the incident should be imputed to the prosecution in

the Downard case. (Dkt. 62, pp. 10-11.) While it is true that "an individual prosecutor has a duty to learn of favorable evidence known to others acting on the government's behalf in the case," *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), there was no evidence that Gary Hagen was acting on the government's behalf in the Downard case. As an Idaho Falls city police officer, he was not involved in the investigation of the Downards' homicides in Ammon, which were being investigated primarily by the Bonneville County Sheriff's Department. More specifically, he was acting as Hill's father rather than a law enforcement official when he advised her to contact the appropriate authorities and stay away from Jeff Smith. (State's Lodging C-4, p. 99.)

Petitioner next claims that the prosecution had a duty to disclose information related to Robin Smith Jacobson's claim that she found a bloody surgical glove under Jeff Smith's mattress, which she allegedly reported to police officers around the time of Petitioner's trial in 1996. This aspect of the claim, based on Jacobson's off-hand recollection during an interview in 2004, is wholly speculative. There is no proof that the glove actually existed, nor is there any evidence tending to show why Jacobson believed that the glove, if it existed, was connected to the Downards' homicides, or why she believed that Jeff Smith might have been involved in the crime. In that same interview, Jacobson stated that she just had a "feeling" that Smith was involved because of his general "attitude" and because of his negative reaction when he heard that Petitioner "might receive a new trial." (Dkt. 63-5, pp. 6, 11, 13; Exhibit 9 to Deposition of Stevan Thompson.) She confirmed at the post-conviction evidentiary hearing that Smith has

never admitted to her that he committed the crime. (State's Lodging C-4, p. 109.)

A meritorious *Brady* claim cannot be pieced together with a petitioner's unsupported conjecture that the disclosure of inadmissible or unreliable information might have led to admissible exculpatory or impeachment material. *See Barker v. Fleming*, 423 F.3d 1085, 1099 (9th Cir. 2005) (dismissing a petitioner's theory of a *Brady* violation as "mere speculation"). The Jacobson evidence is so vague, insubstantial, and unreliable that Petitioner has failed to show how its disclosure would have had any effect on guilt or punishment. *See United States v. Sarno*, 73 F.3d 1470, 1506 (9th Cir. 1995) (finding no *Brady* violation from the failure to disclose evidence that was "marginal, ambiguous, cumulative, inadmissible, unreliable, inculpatory, irrelevant, or of negligible probative worth").

For these reasons, it plainly appears that Petitioner cannot prevail on Claim A in this habeas matter, and the claim will be dismissed.

**2. Right to Present a Defense (Claim B)**

Petitioner next alleges that the trial court's exclusion of evidence tending to show that Jeff Smith committed the crime violated Petitioner's Sixth and Fourteenth Amendment rights to present a meaningful defense. To support this claim, Petitioner relies on the trial court's rulings that excluded evidence of Smith's violent past and other "inculpatory actions." (Dkt. 62, p. 14.)

It is at least debatable whether Petitioner framed this issue in the Idaho state courts as a federal constitutional claim, *see* State's Lodging B-1, pp. 15-22, but the Court is

unable to make conclusive determination on that issue, or to address the merits, without a response from Respondents.  Petitioner may proceed with the claim.

### 3.  Ineffective Assistance of Trial Counsel (Claim C)

Petitioner alleges that he was deprived of his Sixth Amendment right to the effective assistance of counsel at trial on numerous grounds. The Court has reviewed his allegations and concludes that Petitioner will not be entitled to relief on his allegation that counsel failed to advise him adequately about his right to testify, and the subclaim based on that allegation will be summarily dismissed. The Court finds it unnecessary to address Respondents' argument that the claim is procedurally defaulted because Petitioner could not prevail on the merits, even if the Court were to review it under a *de novo* standard of review.

To establish a violation of the Sixth Amendment, a petitioner must show that his counsel's performance was unreasonably deficient and the defense was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). The standard for attorney performance in a criminal case is that of reasonably effective assistance, measured under prevailing professional norms. *Strickland*, 668 U.S. at 687-88. In assessing whether the representation fell below an objective standard of reasonableness, counsel's conduct must be viewed under the facts that existed at the time that the challenged act or omission occurred, rather than through the benefit of hindsight.  *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and tactical or strategic decisions made after a reasonable

investigation are virtually unchallengeable. *Id*; *see also Gerlaugh v. Stewart*, 129 F.3d 1029, 1033 (9th Cir. 1997).

"Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right." *Brooks v. Tennessee*, 406 U.S. 605, 612 (1972). "Although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to have him testify." *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993).

In light of these standards, Petitioner cannot establish that his counsel's performance was unreasonably deficient. One of Petitioner's trial attorneys, Stevan Thompson, testified in a deposition about the circumstances surrounding Petitioner's decision not to testify. It is apparent from Thompson's testimony that Petitioner was not a particularly engaged client and that counsel shouldered a heavier burden to make decisions regarding the direction of the defense. (Dkt. 63, Exhibit MM, p. 78.) Despite this, there is no evidence that counsel forced Petitioner not to testify. Thompson testified that both he and his co-counsel talked to Petitioner about his right to testify, and while they advised him that he should not take the stand, Petitioner never expressed a contrary opinion. (*Id*. at 77.) In reaching that decision, moreover, counsel were worried about the prosecutor's cross-examination and the potential that Petitioner would become frustrated, confused, and project a negative image to the jury. (*Id*. at 78-79.) These were all reasonable concerns that cannot be second guessed in this habeas corpus proceeding.

*Gerlaugh*, 129 F.3d at1033.

Therefore, Petitioner's Claim C, subpart 3, of the Amended Petition will be dismissed.[1]

### 4. Cumulative Nature of Expert Testimony (Claim D)

Petitioner next contends that the State was "allowed to parade expert after expert regarding forensic evidence to the extent that Petitioner was denied his due process right to a fair trial." (Dkt. 62, p. 38.) Petitioner argues that the State should not have been permitted to present two ballistics experts, multiple forensic experts related to shoe impressions, and a crime scene expert.

The Idaho Court of Appeals rejected a similar argument, finding that each expert added relevant evidence to the trial and that the trial court did not abuse its discretion under state law in permitting them to testify. (State's Lodging B-3, pp. 8-10.) The Court of Appeals concluded that Petitioner also had shown no prejudice from the "late" disclosure of Eric Greenwade, a mathematician, two days before the deadline for disclosure of expert witnesses had elapsed. (*Id*. at 10.)

States have wide latitude to develop and apply their own rules of evidence, and federal habeas review of state court evidentiary rulings is extremely limited. *See, e.g.,*

---

[1] Although the Court will not summarily dismiss any other subclaims, it notes that many of the other issues involve allegations that Petitioner's trial counsel did not adequately investigate and present scientific evidence or that counsel failed to challenge the State's scientific evidence adequately. Contrary to these allegations, the record shows a fairly robust defense on these matters, and the Court is skeptical that defense counsel were required to shop for more favorable expert opinions than the ones that they had, but the Court is unable to resolve those issues conclusively without fuller briefing.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Traditionally, a state court's admission of evidence did not provide a basis for habeas relief "unless it rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle*, 502 U.S. at 67-68).

Whether expert testimony or other evidence is cumulative, or whether the disclosure of an expert witness was timely, are questions that arise solely under state evidentiary rules and laws, and this Court has no authority to grant habeas relief over state law questions. *Cf. Estelle*, 502 U.S. at 67-68 (1991). Moreover, this Court agrees with the Idaho Court of Appeals that each expert's testimony generally added relevant and material evidence for the jury's consideration. Petitioner has offered no explanation as to how the trial was rendered fundamentally unfair by the admission of relevant evidence. For these reasons, Claim D will be dismissed.

### 5. Improper Character Evidence (Claim E)

Petitioner's next claim must also be dismissed on the same ground as Claim D. Here, Petitioner contends that the State was improperly allowed to introduce testimony from Beverly Huffaker that Petitioner was attracted to older, heavyset, large-breasted women to support the State's theory that Petitioner murdered the Downards after Mrs. Downard spurned his advances. According to Petitioner, nothing beyond Ms. Huffaker's testimony connected his supposed attraction to older women with Mrs. Downard. The

Idaho Court of Appeals found no merit to a similar issue that was raised under Idaho Rule of Evidence 404(b), concluding that Ms. Huffaker's testimony "was relevant to establishing a possible motive and intent on [Petitioner's] part." (State's Lodging B-3, p. 13.)

As with his last claim, Petitioner is unable to turn a state law evidentiary issue into a federal claim by affixing a due process label to it. While the nexus between Petitioner's alleged attraction to older women and Ms. Downward was tenuous, the state courts were free to find under Idaho's evidentiary rules that Huffaker's testimony on this point was probative to prove motive and intent, and that the probative value of the evidence was not outweighed by its prejudicial effect. This Court concludes that admission of this evidence did not make the trial fundamentally unfair, and Claim E will be dismissed.

### 6. The Admission of James Swogger's Testimony (Claim F)

In Claim F, Petitioner contends that former county jail inmate James Swogger's testimony that Petitioner admitted that he had killed the Downards was "extremely unreliable" because he had "lied" to the prosecutor and investigators. (Dkt. 62, p. 40.) Petitioner claims that the admission of this unreliable testimony "violated [his] due process right to a fair trial." (*Id*.) This claim will be dismissed as lacking in merit.

The United States Supreme Court has held that the Constitution does not erect a *per se* bar on the government's use of "informers," and that "[t]he established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-

examination, and the credibility of his testimony to be determined by a properly-instructed jury." *Hoffa v. United States*, 385 U.S. 293, 311 (1966). This principle was followed by the Ninth Circuit in *Randolph v. California*, 380 F.3d 1133 (9th Cir. 2004). In that case, a habeas petitioner argued that the admission of "inherently unreliable" jailhouse informant testimony violated his due process right to a fair trial. *Id*. at 1147. Like *Hoffa*, the Ninth Circuit concluded that there was no general constitutional prohibition on the use of informant testimony and that the petitioner's constitutional rights were adequately protected through cross-examination and the trial court's jury instructions. *Id*. at 1148; *see also United States v. Cuellar*, 96 F.3d 1179, 1182 (9th Cir. 1996).

*Hoffa* and *Randolph* control the result here. At trial, defense counsel cross-examined Swogger thoroughly about his motives for testifying and about his supposed lies. (State's Lodging A-10, pp. 1565-78.) Counsel also presented another inmate who testified that Swogger's reputation for honesty was not good. (State's Lodging A-13, pp. 2546-60.) In his closing argument, the prosecutor implicitly acknowledged some of Swogger's credibility problems, noting that "whether he is a slimy scum bag or whatever you want to call him for ratting on a jail mate, he nevertheless told you what he heard . . . [a]nd you can give it whatever weight you want to." (State's Lodging A-14, p. 2794.)

Petitioner did not present this claim to the Idaho appellate courts in a procedurally proper manner (State's Lodging B-3, p. 14), but even if he had, he would not be entitled

to relief on the merits in this proceeding.

### 7. Prosecutorial Misconduct – Vouching for State's Witnesses (Claim G)

For his next claim, Petitioner alleges that the prosecutor vouched for several witnesses and misrepresented the evidence in his closing argument. Petitioner raised this issue during his direct appeal, which the Idaho Court of Appeals reviewed for fundamental error. (State's Lodging B-3, p. 14.) In finding "no error, much less fundamental error," the Court of Appeals wrote that, "from our review of the state's closing argument, the special prosecutor never stated a personal opinion as to the credibility of any witness, let alone an opinion about the credibility not based on the evidence or inferences therefrom." (*Id*. at 14.) This Court agrees.

The standard for a claim of prosecutorial misconduct on habeas review is a "narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). A prosecutor's comments or actions that may be considered inappropriate under the rules of fair advocacy, or even reversible error on direct review, will not warrant federal habeas relief unless the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643.

This Court has reviewed the prosecutor's closing argument and concurs with the Idaho Court of Appeals' analysis. Furthermore, even if the prosecutor's argument crossed

the bounds of permissible comment or was not consistent with the evidence on one or two occasions, it did not so infect the trial with unfairness as to result in a denial of due process.

### 8. Ineffective Assistance of Appellate Counsel (Claim H)

Petitioner contends that he was deprived of his right to the effective assistance of counsel on direct appeal under the Fourteenth Amendment because his appellate counsel failed to (1) raise a constitutional issue that Petitioner's right to present a defense was violated by the exclusion of Jeff Smith's threatening and violent history, and (2) raise an issue that the State unconstitutionally shifted the burden of proof to the defendant. (Dkt. 62, pp.41-42.) Because the Court has not dismissed the underlying claims related to these issues, and because this claim may have some bearing on a cause and prejudice analysis related to Respondents' anticipated procedural default defense, the Court will not dismiss it at this time.

### 9. Actual Innocence (Claim I)

The Court previously dismissed Petitioner's attempt to offer his alleged actual innocence as a freestanding basis for relief in this non-capital habeas corpus case, and it is unclear whether he is attempting to re-assert the issue again here. (Dkt. 5, p. 2; Dkt. 62, p. 42.) In any event, the Court reiterates that while a habeas petitioner's actual innocence may serve as a gateway so that a federal court can review an otherwise procedurally barred claim, the Supreme Court has never held that actual innocence is itself a basis for

habeas corpus relief in a non-capital case. To the extent that Petitioner intends to include this as a stand-alone claim, then, it will be dismissed.

## CONCLUSION

Petitioner's Motion to Amend is granted, and Respondents' Motion for Summary Judgment related to the original Petition is dismissed without prejudice. Petitioner's Motion to Expand the Record is conditionally granted but is subject to reconsideration, if necessary, with respect to whether Petitioner can rely on new documentary evidence to support the merits of his claims.

After reviewing of the Amended Petition and taking into consideration the record of the state court proceedings, the Court concludes that it plainly appears that Petitioner will not be entitled to relief on Claims A, C (limited to subpart 3), D, E, F, G, and I, and those claims will be dismissed.

## ORDER

**IT IS ORDERED:**

1. Respondents' Motion to File Oversize Brief (Dkt. 81) is GRANTED.

2. Petitioner's Motion to File Amended Petition for Writ of Habeas Corpus (Dkt. 61) is GRANTED. The Amended Petition is deemed filed as of August 6, 2010.

3. Respondents' Motion for Summary Judgment (Dkt. 12) is DISMISSED without prejudice.

4. Petitioner's Motion to Expand the Record with Additional Attachments (Dkt. 69) is GRANTED, conditionally, as set forth above.

5. Claims A, C (subpart 3), D, E, F, G, and I in the Amended Petition are DISMISSED with prejudice.

6. Respondents shall file an Answer to the non-dismiss claims in the Amended Petition on or before <u>May 27, 2011</u>. The Court does not invite a motion for summary dismissal in this case. Respondents may re-assert all procedural defenses in their Answer, but they shall also address the merits of the remaining claims in their Answer or in an accompanying brief that is filed simultaneously with the Answer. *See* Rule 5(b) of the Rules Governing Section 2254 Cases.

7. Petitioner shall file a Reply to Respondents' Answer and/or any accompanying responsive briefing on or before <u>June 24, 2011</u>. *See* Rule 5(e) of the Rules Governing Section 2254 Cases.

8. The Court intends for all argument and authority to be contained in Respondents' Answer and Petitioner's Reply, or in briefs that accompany those pleadings. The parties shall not submit separate motions for summary judgment.

9. The Court finds that because current expenditures from CJA funds have been significant and because this case is sufficiently complex, a budget

must be approved for appointed counsel to complete the case. *See* General Order 253. Accordingly, on or before April 22, 2011, Petitioner's counsel shall submit a proposed budget to the Court *ex parte* and under seal, together with a declaration or affidavit from counsel supporting the proposed budget. Counsel will need to estimate the number of attorney work hours and other services that will be required to complete this stage of the case in light of the Court's call for an Answer and a Reply. If proceedings beyond this briefing become necessary, such as additional discovery or an evidentiary hearing, counsel may seek to amend the budget order to request additional compensation and services at that time. Counsel may contact the Court's staff for further instructions on the submission of a proposed budget, if necessary.

DATED: **March 28, 2011**

Honorable Edward J. Lodge
U. S. District Judge